IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **KEYBANK NATIONAL ASSOCIATION,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**TRANSATLANTIC LINES HOLDINGS, INC.,** )<br>**TRANSATLANTIC LINES LLC,** )<br>**TRANSATLANTIC LINES SHIPHOLDINGS,** )<br>**INC., TRANSATLANTIC LINES** )<br>**SHIPHOLDINGS II, INC., TRANSATLANTIC** )<br>**LINES TUGHOLDINGS INC., GUDMUNDUR** )<br>**KJAERNESTED AND BRANDON ROSE,** )<br>)<br>Defendants. ) | Civil Action No.: 3:18-cv-1267 |

## COMPLAINT

Plaintiff KeyBank National Association ("KeyBank" or "Plaintiff"), by and through its undersigned counsel, files this complaint against defendants TransAtlantic Lines Holdings, Inc., TransAtlantic Lines LLC, TransAtlantic Lines Shipholdings, Inc., TransAtlantic Lines Shipholdings II, Inc., TransAtlantic Lines Tugholdings Inc., Gudmundur Kjaernested, and Brandon Rose.

## INTRODUCTION

1.   This is a commercial breach of contract action relating to Defendants' breach of a $9 million commercial loan made by Plaintiff to Defendants for use in Defendant's international shipping business. All defendants in this action are directly liable on the loan in the capacity of either a "borrower" or "guarantor." As described more fully below, the loans are in default, collateral securing the loans has been liquidated, and a deficiency balance remains due and owing. Accordingly, Plaintiff is entitled to a money judgment for the deficiency against each Defendant, jointly and severally.

## PARTIES, JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and is between citizens of different states.

3. Plaintiff KeyBank National Association is a national banking association with its principal place of business located in Cleveland, Ohio.

4. For purposes of diversity of citizenship, Plaintiff is a citizen of the state of Ohio.

5. TransAtlantic Lines Holdings, Inc. is a Delaware corporation with a registered agent located at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808. Upon information and belief, TransAtlantic Lines Holdings, Inc.'s principal place of business is in Connecticut.  For purposes of diversity jurisdiction, TransAtlantic Lines Holdings, Inc. is not a citizen of the state of Ohio.

6. TransAtlantic Lines LLC is a Delaware limited liability registered to do business in Connecticut with a principal place of business at 6 Lincoln Avenue, Greenwich, CT 06830 and/or 332 Field Point Road, Greenwich, CT 06830.  Upon information and belief, none of the members of Transatlantic Lines LLC are citizens of the State of Ohio, and therefore, for purposes of diversity jurisdiction, TransAtlantic Lines LLC is not a citizen of the state of Ohio.

7. TransAtlantic Lines Shipholdings, Inc. is a Delaware corporation with a registered agent located at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.  Upon information and belief, TransAtlantic Lines Shipholdings, Inc.'s principal place of business is in Connecticut.  For purposes of diversity jurisdiction, TransAtlantic Lines Shipholdings, Inc. is not a citizen of the state of Ohio.

8. TransAtlantic Lines Shipholdings II, Inc. is a Delaware corporation with a principal place of business at 6 Lincoln Avenue, Greenwich, CT 06830 and/or 332 Field Point Road, Greenwich, CT 06830. For purposes of diversity jurisdiction, TransAtlantic Lines Shipholdings II, Inc. is not a citizen of the state of Ohio.

9. TransAtlantic Lines Tugholdings Inc. is a Delaware corporation with a principal place of business at 6 Lincoln Avenue, Greenwich, CT 06830 and/or 332 Field Point Road, Greenwich, CT 06830 and its registered agent is Corporation Trust Company, Corporation Trust Center 129 Orange Street, Wilmington DE 19801. For purposes of diversity jurisdiction, TransAtlantic Lines Tugholdings, Inc. is not a citizen of the state of Ohio.

10. Upon information and belief, Defendant Gudmundur Kjaernested ("Kjaernested") is a resident of Connecticut with an address at 332 Field Point Road, Greenwich, CT 06830, and thus is not a citizen of Ohio for purposes of diversity jurisdiction.

11. Upon information and belief, Defendant Brandon Rose ("Rose") is a resident of New York with an address at 210 East 78th Street, New York, NY 10075, and thus is not a citizen of Ohio for purposes of diversity jurisdiction.

12. At the time of filing this action there is complete diversity of citizenship between Plaintiff and Defendants pursuant to 28 U.S.C. § 1332.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1332 because the Defendants engaged in business in this district, Mr. Kjaernested is a resident of this district, and the Loan Documents (defined below) include enforceable venue clauses providing for lawsuits to be filed in this district.

## BACKGROUND

### A. *The Loans*

14. On or about November 12, 2015, First Niagara Bank, N.A. ("First Niagara") extended certain loans to Defendants TransAtlantic Lines Holdings, Inc., TransAtlantic Lines LLC, Transatlantic Lines Shipholdings, Inc., TransAtlantic Lines Shipholdings II, LLC, and TransAtlantic Lines Tugholdings, Inc. (each, a "Borrower" and collectively, the "Borrowers") in the combined amount of $9,000,000.

15. Specifically, First Niagara provided Borrowers with a $4,000,000 line of credit ("Line of Credit") and a $5,000,000 term loan (the "Term Loan", together with the Line of Credit, the "Loans").

16. The terms and conditions of the Loans are governed by a Loan Agreement dated November 12, 2015 executed by First Niagara and Borrowers. A true and correct copy of the Loan Agreement is attached as **Exhibit A**.

17. The Line of Credit is evidenced by that certain Committed Revolving Credit Note executed by Borrowers dated November 12, 2015 in the original principal amount of $4,000,000 (the "Line of Credit Note"). A true and correct copy of the Line of Credit Note is attached hereto as **Exhibit B**.

18. The Term Loan is evidenced by that certain Term Note executed by Borrowers dated November 12, 2015 in the original principal amount of $5,000,000 (the "Term Loan Note"). A true and correct copy of the Term Loan Note is attached hereto as **Exhibit C**.

19. In connection with the Loans, Borrowers also executed an ISDA Master Agreement and schedules thereto (the "Swap"). A true and correct copy of Swap documents are attached hereto as **Exhibit D**.

20. In connection with the Loans, Defendant Kjaernested executed and delivered to First Niagara a Guaranty Agreement dated November 12, 2015 (the "Kjaernested Guaranty"). A true and correct copy of the Kjaernested Guaranty is attached hereto as **Exhibit E**.

21. In connection with the Loans, Defendant Rose executed and delivered to First Niagara a Guaranty Agreement dated November 12, 2015 (the "Rose Guaranty", together with the Kjaernested Guaranty, the "Guaranties"). A true and correct copy of the Rose Guaranty is attached hereto as **Exhibit F**.

22. As security for the Loan, on or about November 12, 2015 KeyBank was granted security interests and liens on Borrowers' assets, including, without limitation: (1) a first preferred ship mortgage on the marine vessel TRANSATLANTIC (Official Number 1164643) (the "Transatlantic"); (2) a first preferred fleet mortgage on the marine vessel GEYSIR (Official Number 622178) (the "Geysir") and the freight barge GUANTANAMO BAY EXPRESS (the "Barge"); and (3) a first preferred ship mortgage on the marine vessel SPENCE (the "Tugboat", together with the Barge, the Geysir, and the Transatlantic, the "Vessels"). A true and correct copy of the foregoing mortgages (collectively, the "Mortgages") are attached hereto as **Exhibit G**, **Exhibit H** and **Exhibit I**, respectively.

23. KeyBank was also granted a security interest and lien on Borrowers' personal property and an assignment of certain contracts and agreements relating to the operation of Borrowers' business and the Vessels.

24. On October 11, 2016, First Niagara merged into KeyBank. As a result, KeyBank is the successor-by-merger to First Niagara under the aforementioned documents.

25. On December 20, 2016, Borrowers and KeyBank entered into an Omnibus Loan Modification Agreement ("Modification Agreement") pursuant to which, among other things, the

maturity date of the Loans was extended from November 12, 2016 to November 13, 2017. A true and correct copy of the Modification Agreement is attached hereto as **Exhibit J**.

26.     The Loan Agreement, Notes, Guaranties, Modification Agreement, SWAP, Mortgages, security agreements, assignments, and any and all other documents governing, securing, or otherwise relating the Loans shall be referred to herein as the "Loan Documents."

27.     On or about December 14, 2015, the Tugboat sank while off the coast of Colombia. A claim was submitted through Borrowers' insurer, and upon information and belief, insurance proceeds were distributed in 2016.

### B.     *Deterioration of Business Operations and Liquidation of the Collateral*

28.     In late summer 2017 it came to KeyBank's attention that Borrowers' business operations were in distress. For example:

(a)     Borrowers failed to pay the crew for the Geysir and Transatlantic in July and August of 2017;

(b)     Borrowers failed to make the monthly payments on the Loans when due beginning in July 2017;

(c)     The United States Coast Guard seized and held the Geysir in Florida and the Transatlantic in California due to unpaid crew wages and vessel deficiencies; and

(d)     Various creditors recorded liens against the Geysir and Transatlantic with the United States Coast Guard National Vessel Documentation Center in Falling Waters, West Virginia, as evidenced by the abstract of title reports attached hereto as **Exhibit K** and **Exhibit L**.

29.     As a result of these and other issues, numerous creditors began to enforce remedies against Borrowers and the Vessels.

### (i)     Liquidation of the M/V Geysir in Florida

30.     On or about July 24, 2017 a Turkish shipyard commenced suit against the Geysir, *in rem*, in the United States District Court for the Middle District of Florida (the "Florida Court")

in a case captioned *Erkal Uluslararasi Nakliyat ve Tic. A.S. d/b/a Tuzla Shipyard vs. M/V Geysir and TransAtlantic Lines, LLC,* Case No. 3:17-CV-00840-TJC-JBT (the "Geysir Litigation") for collection of unpaid fees and charges.

31.     Tuzla Shipyard obtained a writ of arrest pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (the "Supplemental Rules") and the Geysir was taken into the custody of the Florida Court and the United States Marshals Service (the "US Marshal") for the Middle District of Florida.

32.     The Florida Court also appointed a third-party private management company as a substitute custodian to maintain the vessel in place of the US Marshal during the course of the Geysir Litigation.

33.     Shortly thereafter, other creditors intervened in the case to assert maritime liens against the Geysir, including suppliers of fuel, services and goods, and numerous crew members.

34.     On or about August 17, 2018, KeyBank intervened in the Geysir Litigation and similarly obtained a writ of arrest under the Supplemental Rules.

35.     During the course of the Geysir Litigation, as the largest creditor of the Geysir, KeyBank was required to advance funds to pay custodial expenses relating to the maintenance and preservation of the Geysir, including dockage, crew wages, supplies, and insurance premiums, in the amount of $870,261.81.  KeyBank also advanced funds to pay pre-custodial delinquent crew wages in the amount of $31,450.00.

36.     On November 29, 2017, the Geysir was sold through a regularly conducted US Marshal's sale which was approved and confirmed by the Florida Court.  KeyBank realized net proceeds from the sale in the amount of $25,000.00.

(i)     Liquidation of the Guantanamo Bay Express

37.     On or about September 19, 2017 KeyBank filed a Verified Complaint to Foreclose Preferred Ship Mortgage relating to the Barge in the Florida Court in a case captioned *KeyBank National Association v. the Freight Barge Guantanamo Bay Express and TransAtlantic Lines, LLC*, Case No. 17-cv-971 (the "Barge Litigation").

38.     At the time, the Barge was docked in Green Cove Springs, Florida.

39.     Also on or about September 19, 2017, KeyBank sought and obtained a writ of arrest pursuant to the Supplemental Rules, which was served by the US Marshal on the Barge.

40.     Following arrest, the Barge was placed in the custody and control of a court-appointed substitute custodian.

41.     KeyBank advanced $101,809.06 for custodial fees associated with the Barge.

42.     On March 14, 2018 the Barge was sold through a regularly conducted US Marshal's sale which was approved and confirmed by the Florida Court. KeyBank realized net proceeds from the sale in the amount of $707,900.66.

(i)     Liquidation of the M/V Transatlantic

43.     On or about September 18, 2017 KeyBank filed a Verified Complaint to Foreclose Ship Mortgage relating to the Transatlantic in the Untied States District Court for the Central District of California (the "California Court") captioned *KeyBank National Association vs. M/V Transatlantic and Transatlantic Lines, LLC* as Case No. 2:17-cv-06873-SJO-RAO (the "Transatlantic Litigation").

44.     On September 21, 2017, KeyBank obtained a writ of arrest pursuant to the Supplemental Rules, which was served by the US Marshal on the Transatlantic.

45. Following arrest, the Transatlantic was placed in the custody and control of a court-appointed substitute custodian.

46. KeyBank also advanced $1,056,451.91 for custodial fees associated with the Transatlantic, including dockage, crew wages, supplies, and insurance premiums, from its arrest in September 2017 through its release from custody of the US Marshal in May 2018.

47. KeyBank advanced funds for: (i) pre-custodianship unpaid crew wages in the amount of $342,972.00 and (ii) water and fuel for the vessel and crew in the amount of $45,252.90.

48. On March 14, 2018 the Barge was sold through a regularly conducted US Marshal's sale which was approved and confirmed by the California Court. KeyBank realized net proceeds from the sale in the amount of $765,000.00.

C. *The Loan Defaults and Balance Due*

49. As a result of the foregoing, numerous "Events of Default" have occurred under the terms and conditions of the Loan Documents including, inter alia:

> (a) Borrowers' failure to make payments when due, including the failure to make monthly payments in July 2017 and any time thereafter, including, without limitation, on the November 13, 2017 "maturity date", an Event of Default under Section 7.1(a) of the Loan Agreement.
>
> (b) The imposition of certain liens and encumbrances on the Geysir and Transatlantic in violation of Section 5.2 of the Loan Agreement, an Event of Default under Section 7.1(b) of the Loan Agreement; and
>
> (c) The arrest of the Geysir in the United States District Court for the Middle District of Florida (Case No. 3:17-CV-00840-TJC-JBT) (the "Geysir Litigation"), an Event of Default under Section 7.1(r) of the Loan Agreement.

50. Additional defaults may have occurred and KeyBank reserves all rights with respect thereto.

51. As a result of the foregoing defaults, KeyBank accelerated the balance due and owing under the Loans.

52. On or about August 16, 2017, KeyBank demanded repayment in full of the Loans from Borrowers and Guarantors. A true and correct copy of a Notice of Default, Acceleration, and Demand dated August 16, 2017 is attached hereto as **Exhibit M**.

53. On or about September 6, 2017 KeyBank elected to terminate the Swap. True and correct copies of Swap termination notices dated September 9, 2017 and September 11, 2017 are attached hereto collectively as **Exhibit N.**

54. To date, the Loans have not been repaid.

55. As of May 30, 2018, the total amount due and owing under the Loan Agreement is $7,809,651.16, calculated as follows:

| | |
|---|---|
| Term Loan Principal: | $3,309,523.80 |
| Term Loan Interest: | $105,128.76 |
| Term Loan Default Interest: | $106,272.49 |
| Term Loan Late Fees: | $1,500.00 |
| **Sub-Total (Term Loan)** | **$3,522,425.05** |
| | |
| Line of Credit Principal: | $2,832,606.68 |
| Line of Credit Interest: | $111,887.64 |
| Line of Credit Default Interest: | $90,964.70 |
| Line of Credit Late Fees: | $1,077.55 |
| **Sub-Total (Line of Credit)** | **$3,036,536.57** |
| | |
| Swap Fees: | $14,599.00 |
| Swap Interest: | $501.46 |
| **Sub-Total (Swap)** | **$15,100.46** |
| | |
| Advances | |
| Custodial Fees (GEYSIR) | $870,261.81 |
| Crew Wages (GEYSIR) | $31,450.00 |
| Custodial Fees (TRANSATLANTIC) | $1,056,451.91 |
| Crew Wages (TRANSATLANTIC) | $342,972.00 |

| | |
|---|---|
| Custodial Fees (GBE) | $101,809.06 |
| Other Advances (Water, Fuel) | $45,252.90 |
| **Sub-Total (Advances)** | **$2,448,197.68** |
| | |
| Legal Fees: | $285,292.06 |
| | |
| Sale Proceeds | |
| Net Sale Proceeds (GEYSIR) | -$25,000.00 |
| Net Sale Proceeds (TRANSATLANTIC) | -$765,000.00 |
| Net Sale Proceeds (GBE) | -$707,900.66 |
| **Sub-Total (Proceeds)** | **-$1,497,900.66** |
| | |
| **Total as of 5/30/2018:** | **$7,809,651.16** |

56. Interest continues to accrue at the default rates set forth in the Loan Documents.

## FIRST CAUSE OF ACTION: MONEY JUDGMENT – BORROWERS

57. Plaintiff repeats and realleges all prior allegations.

58. Pursuant to the Loan Agreement and Notes, Borrowers agreed to repay the Loans, together with, among other things, interest, fees, charges, advances made by Lender for the protection of the Vessels, and attorneys' fees incurred in enforcing KeyBank's rights and remedies under the Loan Documents.

59. As a result of the Borrowers' defaults as set forth above, the balance of the Loans is now due and owing.

60. Borrowers failed to pay the Loan obligations owing to Plaintiff following the Plaintiff's demand.

61. Plaintiff has further been required to obtain the services of an attorney in this matter.

62. Plaintiff is entitled to a money judgment against Borrowers in the amount due and owing under the Loan Documents in the amount of $7,809,651.16, together with interest from and after May 30, 2018 at the default rate set forth in the Loan Documents, attorneys' fees and costs of suit.

## SECOND CAUSE OF ACTION:
## MONEY JUDGMENT – DEFENDANT KJAERNESTED

63. Plaintiff repeats and realleges all prior allegations.

64. Pursuant to the Kjaernested Guaranty, Defendant Kjaernested personally guaranteed all "Obligations" of Borrowers to Plaintiff.  *See* Exhibit E, §1.

65. The "Obligations" include all obligations of the Borrowers, including, without limitation, principal, interest, fees, charges, costs, expenses, attorneys' fees, and swap termination charges.  *Id*.

66. As a result of the Borrowers' defaults as set forth above, the balance of the Loans, including all advances made in connection with the enforcement of KeyBank's remedies and efforts to preserve the Vessels, are now due and owing.

67. Defendant Kjaernested has failed to pay the obligations owing to Plaintiff following the Plaintiff's demand.

68. Plaintiff has further been required to obtain the services of an attorney in this matter.

69. Plaintiff is entitled to a money judgment against the Defendant Kjaernested in the amount due and owing under the Loan Documents and Kjaernested Guaranty in the amount of $7,809,651.16, together with interest from and after May 30, 2018 at the default rate set forth in the Loan Documents, attorneys' fees and costs of suit.

## THIRD CAUSE OF ACTION:
## MONEY JUDGMENT – DEFENDANT ROSE

70. Plaintiff repeats and realleges all prior allegations.

71. Pursuant to the Rose Guaranty, Defendant Rose personally guaranteed all "Obligations" of Borrowers to Plaintiff. *See* Exhibit F, §1.

72. The "Obligations" include all obligations of the Borrowers, including, without limitation, principal, interest, fees, charges, costs, expenses, attorneys' fees, and swap termination charges. *Id*.

73. As a result of the Borrowers' defaults as set forth above, the balance of the Loans, including all advances made in connection with the enforcement of KeyBank's remedies and efforts to preserve the Vessels, are now due and owing.

74. Defendant Rose has failed to pay the Loan obligations owing to Plaintiff following the Plaintiff's demand.

75. Plaintiff has further been required to obtain the services of an attorney in this matter.

76. Plaintiff is entitled to a money judgment against the Defendant Rose in the amount due and owing under the Loan Documents and Rose Guaranty in the amount of $7,809,651.16, together with interest from and after May 30, 2018 at the default rate set forth in the Loan Documents, attorneys' fees and costs of suit.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

    A. A money judgment in the amount due and owing under the Loan Documents in the amount of $7,809,651.16 as of May 30, 2018, together

        with interest at the default rate from and after May 30, 2018, fees, costs, attorneys' fees thereafter, together with any other amounts as may be recovered under the Loan Documents.

    B.    Other and further appropriate relief.

Dated:  July 31, 2018

Respectfully submitted,

/s/ *Stephen Riccardulli*
Stephen Riccardulli
Attorney for Plaintiff
BUCHANAN INGERSOLL & ROONEY PC
640 5th Avenue
9th Floor
New York, New York 10019-6102
Telephone:  (212) 440-4482
Fax:  (212) 440-4401
Stephen.riccardulli@bipc.com